**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LOGAN GRAPHIC PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. <u>2016-cv-10301</u> |
| | ) | |
| TCP GLOBAL CORP. and | ) | **JURY DEMANDED** |
| DEAN A. FAUCETT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Logan Graphic Products, Inc. ("**Logan**") hereby alleges for its complaint against Defendants TCP Global Corp. ("**TCP Global**") and Dean A. Faucett (together, "Defendants") as follows:

### Nature of the Case

1.     This case involves an admitted counterfeiter's knowing and intentional infringement of the well-known and distinctive trade dress Logan has used in connection with its mat-cutting equipment for over 40 years.

2.     Logan's products are used for cutting mats used in framing photographs and artwork, and Logan has been the number-one seller of home mat-cutting products in the United States for many years. Logan sells its products in hobby stores and online through various resellers. One such reseller was Defendant TCP Global, which sold Logan's mat-cutting products for over 5 years before it suddenly decreased the amount of product it purchased from Logan and began offering nearly identical knock-off mat cutters under its own "US Art Supply" product line. TCP Global's knock-off products copy Logan's genuine mat-cutting products so exactly that TCP Global's product manuals include identical copies of schematics, drawings, and even

instructions to replace cutting blades with "#270 blades"—a proprietary Logan part number. TCP Global has offered these knock-off products side-by-side with Logan's products on TCP Global's website, at a price that is significantly lower than the genuine Logan mat-cutting products, and it also offers these knock-off products through its online stores on such sites as Amazon, eBay, and Walmart.

3.      The mat-cutting equipment TCP Global has begun passing off under its US Art Supply product line incorporates distinctive and non-functional elements of Logan's trade dress and is likely to cause confusion among consumers of these products. As such, TCP Global's conduct constitutes infringement and unfair competition under the Lanham Act of 1946, as amended, 15 U.S.C. § 1501 *et seq.*, and under Illinois law.

4.      Following unsuccessful efforts to resolve this matter without litigation, Logan brings this action to eliminate TCP Global's unauthorized and infringing use of Logan's distinctive trade dress and for damages caused by Defendants' acts.

## Parties

5.      Plaintiff Logan Graphic Products, Inc., is an Illinois corporation with its principal place of business in Wauconda, Illinois.

6.      For decades Logan has been engaged in the manufacture, marketing, and sale of a distinctive line of mat-cutting tools throughout the United States and around the world.

7.      On information and belief, Defendant TCP Global is a California corporation with its principal place of business in San Diego, California.

8.      On information and belief, TCP Global is also known as Tri City Paint Corporation.

9.      On information and belief, TCP Global is primarily engaged in the sale of paint and paint supplies for the automotive and other industries.

2

10. On information and belief TCP Global has other business lines that include cake supplies, spray-tan supplies, office supplies, and art supplies. TCP Global sells art supplies under the name U.S. Art Supply.

11. On information and belief, Defendant Dean A. Faucett is the president of TCP Global. On information and belief, Mr. Faucett has authorized and actively participated in the acts complained of herein, and he is ultimately responsible for TCP's infringement of Logan's Trade Dress.

## Jurisdiction

12. This action arises under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* This Court has jurisdiction over the subject matter of Count I pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338.

13. This Court has jurisdiction over claims in this Complaint that arise under state statutory or common law pursuant to 28 U.S.C. §§ 1367(a) and 1338(b) because those claims are so related to the federal claim arising under the Lanham Act that they form part of the same case or controversy and derive from a common nucleus of operative facts.

14. This Court has jurisdiction over Defendants because Defendants directed the acts complained of herein to residents of this judicial district and because Logan suffered harm within this judicial district as a result of Defendants' acts complained of herein.

15. The Northern District of Illinois is a proper venue for this action pursuant to 28 U.S.C. § 1391(b) because, among other things, a substantial part of the events giving rise to Logan's claims occurred in this judicial district and because the intellectual property alleged to be damaged by Defendants' acts is owned by Logan in this judicial district.

## Facts

### *Logan and Its Distinctive Trade Dress*

16.     Since 1974,  Logan has been engaged in the manufacture, marketing and sale of its now-famous line of mat-cutting tools and accessories, which are used to cut mats for framing artwork.

17.     Logan's mat-cutting equipment is characterized by its distinctive look and feel, which is well known by consumers of mat-cutting equipment. Logan's mat-cutting equipment has retained these stylistic elements for at least 40 years, and Logan has long been the number one seller of mat-cutting equipment for home (non-commercial) use in the United States.

18.     Logan offers mat-cutting tools individually and as part of kits that include multiple tools and specialized mat-cutting boards.

19.     Logan's trade dress consists of the following unique elements, among others (collectively referred to as the "**Trade Dress**"):

    (a)     the arbitrary and whimsical use of a vintage-style bicycle grip as the handle and the elliptical shape of the blade holder on Logan's straight cutting tool;

    (b)     the rounded upper corners and the unique shapes of the handles on Logan's pull- and push-style bevel cutting tools;

    (c)     the size, shape, and placement of the squaring arms and rail guides on its cutting boards;

    (d)     the black and silver/grey color scheme applied to all of its mat-cutting products; and

    (e)     the arrangement of components and overall look and feel of its straight cutting tool, its bevel cutting tools, and its mat-cutting boards.

20.     Although the Trade Dress is part of a product that is functional overall (it cuts mats), the specific elements of the Trade Dress are not functional, in the sense that they represent arbitrary stylistic designs of which there are many options for achieving the same function.

4

21. Logan's competitors offer mat-cutting tools that function similarly to Logan's products but that do not incorporate Logan's Trade Dress and are thus not likely to be confused with Logan's mat-cutting products.

22. Logan has devoted considerable time, effort, and resources to its ongoing efforts to market and promote its high-quality mat-cutting products. Logan has sold nearly $50 million in mat-cutting products in the past 10 years (over $35 million in the U.S., alone), and it has spent significant sums in marketing these products.

23. Through decades of use and extensive sales and advertising, the Trade Dress has acquired distinctiveness and secondary meaning. Consumers and potential consumers of Logan mat-cutting equipment recognize the Trade Dress as a source identifier of Logan's products.

24. As a result of Logan's high sales and extensive marketing efforts, the distinctive trade dress associated with Logan's products has acquired widespread consumer and trade recognition and has come to signify Logan's reputation for quality and excellence. The substantial goodwill that dealers, distributors, and consumers recognize and associate with Logan's trade dress has become one of Logan's most valuable assets.

### TCP Global and Its Infringing Acts

25. From 2009 until some point in 2016, TCP Global was a distributor of Logan's mat-cutting products. TCP Global purchased over $650,000 worth of mat-cutting products from Logan in the preceding three years, alone.

26. In or around May 2016, Logan began to notice that the number of products TCP Global was purchasing from Logan had decreased. Logan later viewed TCP Global's website at www.usartsupply.com and saw that US Art Supply was now offering a "US Art Supply" line of mat-cutting products that look virtually *identical* to Logan's mat-cutting products.

27.     A printout from www.usartsupply.com is attached as **Exhibit A**. As shown in Exhibit A, TCP Global has displayed its own products side-by-side with Logan products at prices that are significantly lower than the prices of the corresponding Logan products.

28.     Comparisons of certain of US Art Supply products to Logan products are depicted in the table below. All images in the following table were taken from TCP Global's website at www.usartsupply.com.

| Logan Graphic Products Image | Logan Graphic Products Description | U.S. Art Supply Image | U.S. Art Supply Description |
|---|---|---|---|
|  | **Logan 2000: Push Style Handheld Mat Cutter (LOG 2000)** |  | **US Art Supply Hand Held Push Style Bevel 45 Degree Mat Cutter (USA MC-916HC)** |
|  | **Logan 4000: Deluxe Pull Style Handheld Mat Cutter (LOG 4000)** |  | **US Art Supply Hand Held Pull Style Bevel 45 Degree Mat Cutter (USA MC-920HC)** |

| | | | |
|---|---|---|---|
|  | **Logan 701-1 Straight Cutter Elite** |  | **Hand Held Pull Type Straight Cutting 90 Degree Mat Cutter (USA MC-922HC)** |
|  | **Logan 550-1: Simplex Classic 40" Mat Cutter (LOG 550-1)** |  | **US Art Supply 40" 45-Degree Bevel Cut Complete Matte Cutter (USA MC-340)** |

29.     The US Art Supply products depicted above, as well as other US Art Supply mat-cutting products contain elements of the Trade Dress or elements that are otherwise confusingly similar to the Trade Dress. Indeed, the products TCP Global is selling incorporate virtually every cosmetic aspect of the corresponding genuine Logan products.

30.     Purchasers and potential purchasers of mat-cutting equipment are likely to be confused into believing that the US Art Supply mat-cutting products are made or manufactured by Logan or are otherwise authorized by Logan when in fact they are not.

31.     On information and belief, Defendants have willfully set out to copy Logan's Trade Dress and to confuse consumers. For example, the instruction manuals that accompany the US Art Supply products contain verbatim copies of text from instruction manuals that accompany corresponding Logan products. The US Art Supply instructions even go so far as to provide that #270 blades (a proprietary Logan designation) should be installed in the cutting

heads of the US Art Supply products. Manuals for US Art Supply products also display parts-list schematics that are direct copies of Logan's parts-list schematics. An example is shown in the images below:



Parts list from US Art Supply product manual



Logan parts list

These copied instructions only serve to exacerbate the likelihood of confusion as a result of the striking similarities between US Art Supply products and genuine Logan products.

8

32.     TCP Global has previously admitted to engaging in the sale of counterfeit products. In the case of *The Valspar Corp. v. TCP Global Corp.*, Case No. 12-cv-1885 (D. Minn.), TCP Global—through Defendant Dean A. Faucett—consented to a six-figure judgment and admitted it had purchased and sold genuine Valspar HOUSE OF KOLOR paint from an authorized distributor and then "knowingly sold counterfeit products in cans bearing product labels that are exact copies of Valspar's HOUSE OF KOLOR Trade Dress." In other words, Defendants purchased legitimate product and then transitioned to selling counterfeit versions of that product until they got caught. They have done the same thing with regard to Logan's products, but have continued to do so after Logan brought the issue to their attention.

33.     On information and belief, Defendants are trying to flood the market with knock-off copies of Logan's mat-cutting products by offering them on eBay, Amazon, and Walmart and by giving away free products in exchange for favorable reviews in order to boost their rank in Amazon's listings. For example, an item listed on Amazon as "US Art Supply 40 inch Artist Bevel and Straight Board Mounted Mat Cutter Set" by US Art Supply has 17 customer reviews as of September 19, 2016. The reviews were all posted between June 18, 2016, and July 18, 2016, and all 17 of them contain language stating that the reviewer received free or discounted product in exchange for a review. *See* https://www.amazon.com/US-Art-Supply-Straight-Mounted/product-reviews/B01F6BKMRI/ref=cm_cr_dp_see_all_btm?ie=UTF8&showViewpoints=1&sortBy=recent (last visited, September 19, 2016).

34.     The knock-off products offered by US Art Supply are of an inferior quality to genuine Logan products.

### *Logan's Efforts to Resolve Its Concerns*
### *Without Litigation*

35.    Shortly after learning that TCP Global appeared to be selling knock-off versions of Logan's well-known mat-cutting products, Logan, through counsel, sent a letter to Defendant Faucet, and demanded that TCP Global immediately cease and permanently desist from all sales of mat-cutting products that incorporate Logan's Trade Dress and that TCP Global identify the supplier of the infringing products.

36.    TCP Global, through outside counsel, responded with a letter stating that TCP Global "respectfully declines to cease sales of the product or provide any other information."

37.    After receiving TCP Global's letter, and after monitoring TCP Global's online activities, hoping that the infringing acts would cease, Logan discovered that TCP Global was continuing to offer infringing products, not just on its own US Art Supply website, but also on Amazon, eBay, and Walmart. Accordingly, in light of TCP Global's persistent and expanding use, Logan decided to bring this action in an effort to avoid confusion to the public and further harm to Logan.

### **Count I**

### **False Designation of Origin**
### **(15 U.S.C. § 1125(a))**

38.    Logan adopts and incorporates by reference paragraphs 1–37 as if fully restated herein.

39.    The Trade Dress is non-functional and has acquired distinctiveness through long decades of use and extensive sales and advertising.

40.    Logan owns and has the exclusive right to use the Trade Dress and has used the Trade Dress to identify its mat-cutting products since long before Defendants began selling Infringing Products.

41.     Defendants are marketing, selling, and/or offering to sell mat-cutting products that display elements of the Trade Dress or that are otherwise confusingly similar to the Trade Dress, and consumers are likely to be confused, mistaken, or deceived as to the affiliation, connection, or association between Logan and TCP Global, or as to the origin, sponsorship, or approval of TCP Global's goods or commercial activities by Logan.

42.     Logan has never licensed or otherwise given permission for Defendants to use the Trade Dress.

43.     Logan has suffered harm as a result of Defendants' marketing, sale, and/or offers to sell products that are confusingly similar to Logan's products in the form of lost sales and damage to its reputation. If TCP Global is allowed to continue its sale of knock-off products, Logan will suffer irreparable injury for which Logan has no adequate remedy at law.

44.     On information and belief, Defendants' efforts to sell knock-off mat-cutting products that infringe the Trade Dress have been willful.

45.     Defendants' acts alleged herein constitute violations of 15 U.S.C. § 1125(a).

## Count II

### Violation of Illinois Uniform Deceptive Trade Practices Act
### (815 ILCS 510/1 *et seq.*)

46.     Logan adopts and incorporates by reference paragraphs 1–45 as if fully restated herein.

47.     Defendants have used and are using the Trade Dress in connection with the sale, offering for sale, distribution, promotion, and advertising of its goods in commerce in such a manner as to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods.

48.     As a direct and proximate result of Defendants' unauthorized use of the Trade Dress, Logan has suffered and will continue to suffer substantial injury and irreparable damage to its business, reputation, and goodwill.

49.     By using the Trade Dress without Logan's approval or consent, and with knowledge of Logan's rights in the Trade Dress and Logan's objections to use of the Trade Dress, Defendants have willfully infringed upon the rights of Logan, with an intent to trade upon the goodwill associated with Logan's Trade Dress.

50.     Logan is without an adequate remedy at law to redress Defendants' acts complained of herein and will be irreparably harmed unless Defendants are enjoined from committing and continuing to commit such acts.

51.     Defendants' acts complained of herein thus violate the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

## Count III

### Violation of Illinois Unfair Business Practices Act
### (815 ILCS 505/1 *et seq.*)

52.     Logan adopts and incorporates by reference paragraphs 1–51 as if fully restated herein.

53.     Defendants' acts complained of herein violate the Illinois Unfair Business Practices Act, 815 ILCS 505/1 *et seq.*

54.     As a result of Defendants' acts complained of herein, Logan has been harmed.

## Prayer for Relief

WHEREFORE, Logan requests that judgment be granted in Logan's favor and against Defendants and that this Court award it the following relief:

(a)     A preliminary injunction and a final, permanent injunction against Dean A. Faucett, TCP Global, and all those in active concert or participation

with TCP Global, prohibiting them from manufacturing, adverting, offering, or selling mat-cutting products that embody the Trade Dress or any configuration that is confusingly similar to the Trade Dress;

(b)    An order that all labels, packaging, wrappers, signs, prints, banners, posters, brochures, or other advertising, marketing, or promotional materials bearing images of the Trade Dress be disabled, removed, and destroyed, along with the means for making the same, and that all Internet websites, online advertising, marketing, promotions, or other online materials bearing images of the Trade Dress be disabled, removed, and destroyed;

(c)    An order that Defendants must file with the Court and serve on Logan's counsel within 30 days after entry of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

(d)    Damages in an amount to be proven at trial sufficient to compensate Logan for all damages caused by Defendants' conduct, with such damages to be trebled if appropriate within the Court's discretion;

(e)    Disgorgement of all profits or other unjust enrichment obtained by Defendants as a result of TCP Defendants' conduct complained of herein, with the amount of such profits increased to the extent they are inadequate to compensate Logan for the harm incurred as a result of Defendants' acts;

(f)    Reimbursement of all allowable costs associated with this action;

(g)    Payment of Logan's attorneys' fees under 15 U.S.C. § 1117 and/or 815 ILCS 510/3;

(h)    Pre- and post-judgment interest; and

(i)    Any and all additional relief that this Court deems just.

## **Jury Demand**

Logan Graphic Products, Inc., hereby demands a trial by jury on all issues as to which trial by jury is allowed.

Dated: November 2, 2016        Respectfully submitted,

/s/Kristin J. Achterhof
Kristin J. Achterhof (6206476)
Jeffrey A. Wakolbinger (6297872)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
Fax: (312) 902-1061
kristin.achterhof@kattenlaw.com
jeff.wakolbinger@kattenlaw.com

*Attorneys for Logan Graphic Products, Inc.*